IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MAXINE TURNER, *et al.* | * | |
| *Plaintiffs*, | * | |
| v. | * | Civil Action No. RDB-24-318 |
| ANTONY J. BLINKEN, *et al.*, | * | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs Maxine Turner ("Turner") and Victor Jean Marie Quentin ("Quentin") (collectively, "Plaintiffs"), bring this unreasonable delay claim against Defendants Antony J. Blinken, in his official capacity as U.S. Secretary of State; Rena Bitter, in her official capacity as Assistant Secretary of the Bureau of Consular Affairs; David R. McCawley, in his official capacity as Deputy Chief of Mission in Paris, France; and John Doe, in his official capacity as Consular Officer at the U.S. Consulate in Paris, France, (collectively "Defendants"), regarding Plaintiffs' pending K-1 fiancé(e) visa ("K-1 visa") application.[1] (ECF No. 1 at 2.)[2] Turner is a U.S. citizen whose fiancé, Quentin, is a French national residing in France. On June 26, 2023, Quentin filed an application for entry into the United States under the K-1 visa process. (*Id.* ¶ 3.) On August 30, 2023, Quentin attended his visa interview at the U.S. Embassy in

---

[1] As explained below, a K-1 visa allows a U.S. citizen's spouse or fiancé(e) to obtain legal entry into the United States. (ECF No. 1 ¶ 1.) Under the K-1 visa, a foreign-citizen fiancé(e) of a U.S. citizen may travel to the United States to marry his or her U.S. citizen sponsor within 90 days after arrival. (ECF No. 12 at 12.); *see also* 8 U.S.C. § 214.2(k)(5).

[2] Except where otherwise indicated, this Memorandum Opinion cites to the ECF generated page numbers, rather than the page numbers included at the bottom of the parties' submissions.

Paris, and, at the conclusion of the interview, learned that his case had been placed in administrative processing under § 221(g) of the Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq.* ("INA"). (*Id.* ¶ 22.) Administrative processing under INA § 221(g) constitutes refusal of a visa application. (ECF No. 12 at 13); 8 C.F.R. § 41.121(a). On January 31, 2024, Turner and Quentin filed the instant action to compel adjudication of Quentin's visa application under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* ("APA") (Count I).³ (ECF No. 1 at 7.)

Pending before this Court is Defendants' Motion to Dismiss ("Defendants' Motion") (ECF No. 12). Plaintiffs have responded in opposition (ECF No. 13) and Defendants have replied (ECF No. 14). The parties' submissions have been reviewed and no hearing is necessary. Loc. R. 105.6 (D. Md. 2023). For the reasons explained below, Defendants' Motion is GRANTED and Plaintiffs' Complaint is DISMISSED.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found.*

---

³ Although Plaintiffs' Complaint references both the Mandamus Act, 28 U.S.C. § 1361, and the APA, 5 U.S.C. § 701, *et seq.*, in its title, it raises only unreasonable delay under the APA § 706(1) in its text. (ECF No. 1 ¶¶ 28–41.) Both the Mandamus Act and APA § 706(1) enable courts to compel an agency to perform a non-discretionary duty owed to a plaintiff. *See* 28 U.S.C. § 1361 ("[D]istrict courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."); 5 U.S.C. § 706(1) ("The reviewing court shall … compel agency action unlawfully withheld or unreasonably delayed[.]"). As Judge Chasanow of this Court has noted, many district courts have determined that they "lack jurisdiction to decide claims for mandamus relief which would be duplicative of their cause of action under the APA." *Jahangiri v. Blinken*, Civ. No. DKC-23-2722, 2024 WL 1656269, at * 14 (D. Md. Apr. 17, 2024). Even where courts find jurisdiction despite duplicative mandamus and APA claims, they apply the same analysis to both claims such that dismissal of one necessitates dismissal of the other. *See Skalka v. Kelly*, 246 F. Supp. 147, 152 (D.C. Cir. 2017). To the extent that Plaintiffs seek to raise a mandamus claim here, it would be duplicative of their APA claim. Accordingly, the Court construes Plaintiffs' Complaint to raise a claim of unreasonable delay under APA § 706(1) only.

*v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  Except where indicated otherwise, the following facts are derived from Plaintiffs' Complaint (ECF No. 1) and accepted as true for the purpose of Defendants' Motion to Dismiss (ECF No. 12).

### I.   K-1 Visa Process

Before reaching Plaintiffs' allegations, it is helpful to review the process by which Quentin seeks entry into the United States.[4]  Under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, a foreign national generally may not be admitted into the United States without a visa.  (ECF No. 12 at 12.)  The K-1 visa allows a foreign-citizen fiancé(e) of a U.S. citizen to enter the United States and marry his or her U.S. citizen sponsor within 90 days of arrival.  (*Id.*); *see also* 8 U.S.C. § 1101(a)(15)(K)(i).  Once the foreign citizen has received his K-1 visa, arrived in the U.S., and married his fiancé(e), he may apply for adjustment of status to permanent resident with the Department of Homeland Security, U.S. Citizenship and Immigration Services ("USCIS").  (ECF No. 12 at 12.)

The process to obtain a K-1 visa proceeds in two stages: (1) the U.S. citizen sponsor submits his or her application, and (2) the sponsor's foreign-citizen fiancé(e) submits a separate application and attends a visa interview in their country of residence.  (*Id.*)  First, the U.S. citizen sponsor must file a Form I-129F Petition for Alien Fiancé(e) ("Form I-129F"), with USCIS.  (*Id.*)  If USCIS approves the Form I-129F, it remains valid for four months.  (*Id.*); *see*

---

[4] Except where indicated otherwise, this explanation of the K-1 visa application process is taken from Defendants' Motion (ECF No. 12).  Plaintiffs provide a similar description of the steps to entry under a K-1 visa in their Complaint and opposition filing.  (ECF No. 1; ECF No. 13.)  *See also Nonimmigrant Visa for a Fianc(é)e (K-1)*, TRAVEL.STATE.GOV: U.S. DEPARTMENT OF STATE—BUREAU OF CONSULAR AFFAIRS, https://travel.state.gov/content/travel/en/us-visas/immigrate/family-immigration/nonimmigrant-visa-for-a-fiance-k-1.html (last visited November 26, 2024).

*also* 8 C.F.R. § 214.2(k)(5). After approving a Form I-129F, USCIS sends it to the National Visa Center ("NVC"), which assigns a case number and forwards it to the U.S. Embassy or Consulate in the country where the U.S. citizen sponsor's fiancé(e) is located. (*Id.*)

Next, the foreign fiancé(e) must submit various forms—including a Form DS-160, Online Nonimmigrant Visa Application ("Form DS-160")—and bring required documents to an interview at the appropriate U.S. Embassy or Consulate. (*Id.*); 22 C.F.R. § 41.103. The consular officer alone determines whether to issue the visa, refuse the visa, or, pursuant to an outstanding order under INA § 243(d), discontinue granting the visa. (ECF No. 12 at 12); 8 U.S.C. § 1201(a); 22 C.F.R. § 41.121. Under INA § 221(g), a consular officer may refuse to issue a visa based on the applicant's failure to meet his burden to demonstrate his eligibility for the requested visa. (ECF No. 12 at 13); 8 U.S.C. § 1201(g).[5] Section 221(g) also permits a consular officer to provide the applicant additional administrative process to establish his eligibility such that the consular officer reconsiders the initial visa refusal. (ECF No. 12 at 13); 8 U.S.C. § 1361; 8 U.S.C. § 1201(g).

## II. Plaintiffs' Allegations

It is by this process that Plaintiffs, who are currently engaged, sought to obtain a K-1 visa that would enable Quentin to legally enter the United States to marry Turner, who is a

---

[5] Due to reordering of the INA, § 221(g) is properly cited as 8 U.S.C. § 1201(g), and provides, in relevant part:
> No visa or other documentation shall be issued to a[] [noncitizen] if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law[.]

8 U.S.C. § 1201(g). This Memorandum Opinion "'uses the term noncitizen as equivalent to the statutory term 'alien.'" *Lovo v. Miller*, 107 F.4th 199, 202 n.1 (4th Cir. 2024) (quoting *Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020)).

4

U.S. citizen living in Maryland. (ECF No. 1 ¶¶ 1, 10, 16.) On March 23, 2023, USCIS approved Turner's Form I-129F, and, on June 20, 2023, NVC notified Quentin that it had received the approved Form I-129F from USCIS.[6] (*Id.* ¶ 19.) Just a week later, on June 26, 2023, Quentin submitted his Form DS-160. (*Id.* at ¶ 3.) On August 30, 2023, Quentin completed his scheduled interview at the U.S. Embassy in Paris, France. (*Id.* ¶ 21.) Immediately following his interview, Quentin received a Form 221(g) informing him that his case had been placed in administrative processing. (*Id.* ¶ 22.) In accordance with the instructions in the Form 221(g), Quentin mailed his passport to the Embassy via courier service on August 30, 2023. (*Id.*) Later that same day, he received an email asking him to provide additional information by submitting a Form DS-5535, which he timely completed and returned. (*Id.*) Plaintiffs allege that since August 30, 2023, Quentin's visa application has remained in administrative processing without updates despite Plaintiffs' multiple requests for further adjudication. (*Id.* ¶ 23; ECF No. 13 at 12; No. 13-1 at 1; ECF No. 13-2.) Plaintiffs acknowledge that administrative processing under § 221(g) constitutes a refusal, but argue that such refusal is not a final adjudication of a non-immigrant visa. (ECF No. 13 at 12.)

Plaintiffs allege that the processing delay of six months at the time of filing—and now fifteen months—violates the APA and has caused them significant financial and emotional hardships. (ECF No. 1 ¶¶ 25–26, 30–34.) Specifically, Plaintiffs allege that Congress has mandated that the State Department must adjudicate K-1 fiancé(e) visa applications within 30 days of receipt of all necessary documents from the applicant and USCIS. (*Id.* ¶ 34 (citing 8

---

[6] For clarity, the Court notes that Turner filed the Form I-129F of which Quentin is the beneficiary, and the Form I-129F is a required component of Quentin's application for a K-1 visa. (ECF No. 1 ¶ 19; ECF No. 13 at 8.)

U.S.C. § 1201 note 6.)  Plaintiffs allege that the pending application has prevented their marriage because Quentin's visa will be denied if they marry before it is issued.  (*Id.* ¶¶ 6, 27.) According to Plaintiffs, the U.S. Embassy in Paris has provided no explanation for the months-long processing delay.  (*Id.* ¶¶ 36–38.)  Finally, Plaintiffs allege that the unreasonable delay violates Turner's due process rights regarding her familial choices.  (*Id.* ¶ 40.)

## STANDARD OF REVIEW

### I.     Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a court's authority to hear the matter brought by a complaint.  *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).  A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true."  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted).  In determining jurisdiction, the district court must "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768–769 (4th Cir. 1991). The plaintiff bears the burden of proving, by a preponderance of the evidence, the existence of subject matter jurisdiction.  *Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015).[7]

---

[7] Although Defendants move to dismiss under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), this Court determines that it lacks jurisdiction under Rule 12(b)(1).  Accordingly, the Court does not reach the merits of Plaintiffs' claim and need not address Defendants' Motion under Rule 12(b)(6).

6

**ANALYSIS**

In their Motion, Defendants argue that Plaintiffs' claim must be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Specifically, Defendants argue that, under Rule 12(b)(1), the Court lacks subject matter jurisdiction because (1) Plaintiffs cannot establish that Defendants had a clear, non-discretionary duty to act, and (2) the case is moot because a consular officer has already adjudicated Quentin's application. (ECF No. 13 at 7–15.) Alternatively, Defendants argue under Rule 12(b)(6) that the case must be dismissed because (1) the consular non-reviewability doctrine precludes adjudication by this Court, and (2) the alleged delay is not unreasonable.[8] (*Id.* at 10-20.) Courts must have jurisdiction to reach a plaintiff's substantive claims. *See Elyazidi v. SunTrust Bank,* 780 F.3d 227, 232 (4th Cir. 2015) (deeming jurisdiction a threshold issue that courts must determine "before 'addressing the merits'" of a claim (quoting *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999))). Accordingly, the Court addresses subject matter jurisdiction first.

**I.   Subject Matter Jurisdiction**

Defendants argue that this Court lacks subject matter jurisdiction for two reasons. First, Defendants assert that the APA does not authorize review of Defendants' delay in processing a K-1 visa application. (*Id.* at 17.) Specifically, Defendants contend that the APA only provides jurisdiction for a claim of unreasonable delay where the plaintiff alleges that the agency failed to observe a clear, non-discretionary duty to act and bars judicial review where,

---

[8] Because this Court determines, as explained below, that it lacks subject matter jurisdiction, the Court does not reach Defendants' arguments regarding mootness and failure to state a claim under Rule 12(b)(6). As explained below, because Defendants' refusal of Quentin's visa application under § 221(g) fulfilled Defendants' non-discretionary duty, this Court lacks jurisdiction to review any claim under the APA. Instead, Plaintiffs can pursue their claim against Defendants through the appropriate immigration appeal process.

as here, an action falls within an agency's discretion. (*Id.*) Second, Defendants argue that, even if Plaintiffs could show the existence of a clear, non-discretionary duty, this case is moot because Quentin's application has already been adjudicated. (*Id.* at 19.) Defendants assert that a consular officer's decision to refuse a visa application under § 221(g) constitutes a final adjudication. (*Id.* at 19–20.) Accordingly, Defendants contend that Plaintiffs lack a legally cognizable interest in the outcome of this litigation and there is no longer an actual case or controversy before this Court. (*Id.*)

In response, Plaintiffs argue that Defendants have a clear, non-discretionary duty to adjudicate visa applications within a reasonable time pursuant to 22 C.F.R. §§ 41.121(a) and 41.102(A) and the APA §§ 555(b). (ECF No. 13 at 8, 9, 10.) Moreover, Plaintiffs contend that their claim is not moot because disposition of a visa application under § 221(g) does not constitute final adjudication even though such disposition indicates that the application has been "refused." (*Id.* at 9.) Rather, Plaintiffs argue that Defendants have admitted that all visa applications are deemed "refused" as long as administrative processing is incomplete. (*Id.*) Therefore, applications that remain in administrative processing have not been fully and finally adjudicated.[9] (*Id.*)

As the Supreme Court has explained, a district court has subject matter jurisdiction to compel agency action under § 706(1) of the APA only if the agency has a non-discretionary duty to act. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004). That is, "'[w]here an agency 'fails to take a discrete action that it is required to take,' the APA creates a private cause

---

[9] Plaintiffs also contend that mandamus relief is appropriate, but, as noted above, the Court construes their Complaint, consistent with its language, to raise only a claim under the APA. Accordingly, the Court need not address Plaintiffs' mandamus arguments.

of action for a party aggrieved by that agency's unreasonable delay,'" but "where an agency is *not required* to do something, [courts] cannot compel the agency to act—let alone to act faster." *Gonzalez v. Cuccinelli*, 985 F.3d 357, 366 (4th Cir. 2021) (emphasis in original) (quoting *Fed. Energy Regul. Comm'n v. Powhatan Energy Fund, LLC*, 949 F.3d 891, 903 (4th Cir. 2020)); *see also Norton*, 542 U.S. at 63 n.1. Federal courts, including those in the Fourth Circuit, are split as to whether adjudication of a visa application is a discrete, non-discretionary duty subject to judicial review under APA § 706(1). *See, e.g.*, *Jahangiri v. Blinken*, Civ. No. DKC-23-2722, 2024 WL 1656269, at * 7 (D. Md. Apr. 17, 2024) (reaching APA unreasonable delay claim regarding visa application without discussing non-discretionary duty); *Jaraba v. Blinken*, 568 F. Supp. 3d 720, 729 (W.D. Tex. 2021) (collecting cases holding courts have a non-discretionary duty to adjudicate visa applications in a timely manner). *But see Ishaq v. Schofer*, Civ. No. 8:24-cv-207-TJS, 2024 WL 3729107, at * 5 (D. Md. Aug. 8, 2024) (holding court lacked jurisdiction because there is no non-discretionary duty to adjudicate a visa application); *Mueller v. Blinken*, 682 F. Supp. 3d 528, 536–37 (E.D. Va. 2023) (holding court lacked jurisdiction because there is no non-discretionary duty to adjudicate a visa application).

Because the plaintiff bears the burden to prove subject matter jurisdiction, the existence of such jurisdiction in cases alleging unreasonable delay in adjudicating a visa application turns on the plaintiff's circumstances—that is, the type of visa he seeks and his position within the adjudication process. Here, Quentin seeks a K-1 visa and has completed all steps in the application process, including attending his interview with a consular officer, providing requested supplemental information, and surrendering his passport to the U.S. Embassy in

Paris. To support jurisdiction over his unreasonable delay claim, he cites 5 U.S.C. § 555(b) and two federal regulations, 22 C.F.R. §§ 41.102(a) and 41.103(a)(1).[10]

As Judge Sullivan of this Court has recently explained, 5 U.S.C. § 555(b) cannot support jurisdiction under the APA § 706(1). *Ishaq*, Civ. No. 8:24-cv-207-TJS, 2024 WL 3729107, at *5. Under 5 U.S.C. § 555(b), "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." The U.S. Court of Appeals for the Fourth Circuit has determined that such broad language is not sufficient to create the discrete, non-discretionary duty required to enable judicial review of agency inaction under APA § 706(1). *Gonzalez*, 985 F.3d at 365–66 (holding court lacked subject matter jurisdiction despite § 555(b)'s instruction that agencies act "within a reasonable time"); *see also Ali v. U.S. Dep't of State*, 676 F. Supp. 3d 460, 470 (E.D.N.C. 2023) (explaining that § 555(b) does not create "specific non-discretionary duties"). Moreover, Plaintiffs concede in their opposition filing that § 555(b) does not create any specific, non-discretionary duty for an agency to act. (ECF No. 13 at 9.)

Under 22 C.F.R. § 41.102(a), however, immigration officials have at least some non-discretionary duties regarding nonimmigrant visa applications. Specifically, under 22 C.F.R. § 41.102(a), at a noncitizen's visa interview, the consular officer "shall determine on the basis of the applicant's representations, the visa application and other relevant documentation: (1) [t]he

---

[10] As Defendants note in their responsive filings, 22 C.F.R. § 41.103(a)(1) provides that "[e]very [noncitizen] seeking a nonimmigrant visa must make an electronic application on Form DS-160 or, as directed by a consular officer, an application on Form DS-156." 22 C.F.R. § 41.103(a)(1); (ECF No. 14 at 2 n.1.) Section 41.103(a)(1) also provides instructions regarding electronic signatures on Forms DS-160. If anything, this regulation appears to impose a duty on applicants rather than consular officers or U.S. immigration officials. Accordingly, § 41.103(a)(1) cannot impose the discrete, non-discretionary duty required to supply subject matter jurisdiction for judicial review pursuant to APA § 706(1), and the Court need not analyze this regulation further.

10

proper nonimmigrant classification, if any, of the [noncitizen]; and (2) [t]he [noncitizen's] eligibility to receive a visa." As the Fourth Circuit has noted, use of "shall" in an immigration statute suggests a mandatory duty to act. *See Gonzalez*, 985 F.3d at 371 ("[T]he term 'pending, bona fide application' does not transform the discretionary 'may' into *a mandatory 'shall.'*") (emphasis added)). Thus, 22 C.F.R. § 41.102(a) imposes on consular officers a non-discretionary duty to determine an applicant's proper nonimmigrant classification and eligibility for a visa.

The critical question here, therefore, is whether refusal under § 221(g) constitutes the required determination of an applicant's eligibility to receive a visa.[11] Although neither the Fourth Circuit nor the Supreme Court of the United States has squarely addressed this issue, many courts in the Fourth Circuit have held that refusal of a visa under § 221(g) fulfills immigration officials' discrete, non-discretionary duty regarding visa applications. *See Ramizi v. Blinken*, 2024 WL 387041, at *10 (E.D.N.C. Aug. 14, 2024) (holding refusal under § 221(g) satisfies agency's non-discretionary duty); *Aslam v. Heller*, 2024 WL 3535389, at *6 (M.D.N.C. July 23, 2024) (holding refusal under § 221(g) satisfies agency's non-discretionary duty); *Ameen v. U.S. Dep't of State*, 2024 WL 3416264, at *3, *3 n.7 (E.D. Va. July 15, 2024) (noting refusal of plaintiff's visa application under § 221(g) would have resulted in determination that judicial review of plaintiff's claim was barred).[12] Courts outside the Fourth Circuit have reached the

---

[11] Plaintiffs concede that § 221(g) constitutes refusal of the visa. (ECF No. 13 at 9, 12.)
[12] Where courts have found a non-discretionary duty to take further action to adjudicate a visa refused under § 221(g), they have relied on 22 C.F.R. § 42.81(e). *See, e.g.*, *Parva v. Blinken*, 2024 WL 4042466, at *3–*4 (D. Md. Sept. 4, 2024). This regulation governs refusal of *immigrant* visas and requires reconsideration of visa applications where the applicant submits additional information after the initial refusal. The K-1 visa that Plaintiffs seek here is a *nonimmigrant* visa that is not subject to 22 C.F.R. § 42.81(e). *See* (ECF No. 12 at 12).

same conclusion. *See, e.g.*, *Yaghoubnezhad v. Stufft*, 2024 WL 2077551, at *8, *10 (D.D.C. May 9, 2024) ("Without any statute or regulation pointing to additional discrete action [beyond refusal under § 221(g)] that State is required to take, Plaintiffs cannot compel State to take any further action on their applications under § 706(1).").

Here, Plaintiffs have cited no authority or regulations imposing an additional duty on Defendants to adjudicate a K-1 visa that has been refused, or placed into administrative processing, under § 221(g). The consular officer who interviewed Quentin already determined that he was ineligible for a K-1 visa, which fulfills Defendants' non-discretionary duty pursuant to 22 C.F.R. § 41.102(a). Absent further authority, Plaintiffs cannot meet their burden to prove subject matter jurisdiction because they cannot show that Defendants have failed to fulfill a discrete, non-discretionary duty to act after their refusal of Quentin's visa pursuant to § 221(g).[13] Accordingly, this Court lacks subject matter jurisdiction to review Plaintiffs' APA claim. Defendants' Motion to Dismiss (ECF No. 12) is GRANTED pursuant to Rule 12(b)(1) because this Court lacks subject matter jurisdiction.[14]

---

[13] While this Court lacks subject matter jurisdiction because Defendants have no non-discretionary duty to adjudicate a nonimmigrant visa application that has been refused under § 221(g), the Court feels compelled to note the real human consequences of Defendants' failure to provide further adjudication. Because Quentin complied with the Government's request that he surrender his passport while his visa application is in administrative processing under § 221(g), Quentin remains in an odd sort of limbo until the U.S. Embassy in Paris releases his passport. He cannot travel freely outside of his native France because he would need his passport to enter certain countries. Similarly, Plaintiffs cannot marry without compromising Quentin's visa application. The Embassy's ability to retain his passport—thereby limiting his ability to travel despite having refused his K-1 visa pursuant to § 221(g)—strongly suggests that adjudication of a visa application as refused under § 221(g) is not a final adjudication. *See, e.g., Jahangiri*, Civ. No. DKC-23-2722, 2024 WL 16562696, at *5. Even so, this Court lacks subject matter jurisdiction to reach Plaintiffs' claim because the regulations governing nonimmigrant visas require only that a consular official refuse, issue, or discontinue granting a visa. 8 U.S.C. § 1201(a); 22 C.F.R. § 41.121. Here, Defendants refused Quentin's K-1 visa under § 221(g).

[14] Although this Court lacks subject matter jurisdiction to reach Plaintiffs' substantive claim, the Court finds it prudent to briefly note that should Plaintiffs refile this action as pleaded here, it would likely fail on the merits. *See, e.g., Ishaq*, 2024 WL 3729107, at *5–*7 (ruling on merits in the alternative after concluding the court lacked jurisdiction). When evaluating a motion to dismiss an APA § 706(1) claim, this Court ordinarily applies the six factors elucidated in *Telecommunications Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70 (D.C. Cir. 1984):

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 12) is GRANTED.  Specifically, Defendants' Motion (ECF No. 12) is GRANTED pursuant to Federal Rule of Civil Procedure 12(b)(1) because this Court lacks subject matter jurisdiction over Plaintiffs' claim of unreasonable delay under APA § 706(1).  Plaintiffs' claim is DISMISSED.

A separate Order follows.

Dated: December 3, 2024

/s/ _____
Richard D. Bennett
Senior United States District Judge

---

(1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 80 (internal quotation marks and citations omitted).  Judge Chasanow of this Court recently applied these factors to dismiss a very similar claim of unreasonable delay in adjudicating a K-1 visa application.  *See Jahangiri*, Civ. No. DKC-23-2722, 2024 WL 1656269, at *7–*13.